UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 21-5267
(C.A. No. 20-0068)

WILLIAM BUSH,                                                    Appellant,

  v.

UNITED STATES DEPARTMENT
OF AGRICULTURE, et al.,                                         Appellees.

## APPELLEES' COMBINED MOTION FOR SUMMARY AFFIRMANCE AND OPPOSITION TO APPELLANT'S MOTIONS FOR INJUNCTION PENDING APPEAL

Defendants-Appellees, the United States of America and the U.S. Department of Agriculture ("USDA"), respectfully move for summary affirmance of the Honorable Carl J. Nichols' September 30, 2021, Memorandum Opinion and Order [R.27, 28][1] (attached hereto as Exhibits A and B), granting Appellees' motion for summary judgment and denying Plaintiff-Appellant William Bush's cross-motion for summary judgment on his claims under the Freedom of Information Act ("FOIA").

---

[1] "R" and a number refer to the docket entry number for documents in the District Court Record.

Summary disposition is appropriate in this case because the "merits of this appeal are so clear as to make summary affirmance proper," *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980), and "no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-298 (D.C. Cir. 1987).[2]

## BACKGROUND

Although the present FOIA suit arises from a FOIA request submitted on November 26, 2019, this suit is largely an effort to re-do a FOIA lawsuit Bush lost regarding a nearly-identical FOIA request. The 64-page Complaint is a re-hash of legal arguments unsuccessfully raised at various stages of the previous litigation, which Bush attempted to litigate all the way to the Supreme Court. Bush effectively admits to this attempt to re-do his previous case when he states in his Complaint, "[t]here is no this case without *Bush I*," referencing the previous litigation. Compl. ¶ 120. The Complaint also attempts to turn Bush's disagreements with the rulings

---

[2]     Bush also appeals an order granting USDA's motion to extend time to respond to the Complaint and an order denying Bush's motion for recusal of Judge Nichols. *See* Notice of Appeal [R.29]. The District Court has broad discretion to manage its docket and did not abuse that discretion by granting the extra period to allow Defendants to prepare an appropriate response to the Complaint, in light of the explanations offered in the motion for extension [R.3]. Likewise, Bush cannot show that "a reasonable and informed observer would question the judge's impartiality" when the Court re-served its Standing Order on the *pro se* litigant. *See SEC v. Loving Spirit Found., Inc*., 392 F.3d 486, 493 (D.C. Cir. 2004); Mot. for Recusal Opp. [R.15].

and outcome of the previous FOIA litigation into purported "policy or practice" FOIA claims against USDA and an alleged "constitutional claim" against the United States.

Thus, the background to this case begins on February 29, 2016, when Plaintiff submitted a FOIA request to USDA's Risk Management Agency ("RMA") for "the total production, acres harvested, and yield for corn and for soybeans aggregated by section for Amherst, Rock, Sheridan and Tilden townships in Cherokee County, Iowa for 2015, 2014, 2013 and 2012" [hereinafter, "2016 FOIA Request"]. *See* Def. Summ. J. Mot., Ex. 1 [R.17]. USDA responded that it "does not have this information available by section for townships within a county." *Id*., Ex. 2. After an unsuccessful administrative appeal, on November 16, 2016, Plaintiff filed suit against USDA/RMA in the U.S. District Court for the Northern District of Iowa. That court granted summary judgment in favor of USDA, holding that the agency conducted an adequate search, that "the record shows that RMA did not maintain records matching the description of [Bush's] request[,]" and that "Defendant did not have an obligation under FOIA to create records" for him. *See Bush v. USDA*, Civ. A. No. 16-4128, 2017 WL 3568672, *6 (N.D. Iowa Aug. 17, 2017) (hereinafter "*Bush I*"). The court also concluded that Exemption Three would have precluded disclosure of such information if it existed, *id*. at *7; and that Bush was not entitled to attorneys' fees, *id*. at *7–8. Bush appealed to the Eighth Circuit, which summarily

affirmed the district court's ruling. *See Bush v. Risk Mgmt. Agency, USDA/RMA*, 728 F. App'x 607 (8th Cir. 2018). The Supreme Court denied Bush's petition for a writ of certiorari. *Bush v. Dep't of Agric., Risk Mgmt. Agency*, 139 S. Ct. 1200 (2019).

On November 26, 2019, not long after the Supreme Court denied his petition, Plaintiff submitted a FOIA request that is materially identical to the 2016 request. It sought:

> [T]otal production, acres, and yield aggregated by section for corn and for soybeans for Amherst, Rock, Sheridan and Tilden Townships in Cherokee County, Iowa, for the years 2012-2018. I also request a record count by section of the number of records aggregated. This request includes, but [is] not limited to, information from 7 C.F.R. §400.52(n) Actual Production History Coverage Program production reports. This request encompasses all of USDA, including, but not limited to: Risk Management Agency, Farm Services Agency, and National Agriculture Statistics Service.

Declaration of Joneta Saceda ("Saceda Decl."), Ex. 1 [R.17-4] [hereinafter, "2019 FOIA Request"]. This request is identical to the 2016 Request with the exception that it seeks three additional years (2016-18) of records and provides more clarity that his request "includes . . . information from" Actual Production History ("APH") Coverage Program production reports.

Less than a month after submitting this FOIA request, Bush filed the instant lawsuit. *See* Compl. [R.1]. Subsequently, two divisions of USDA provided responses to the FOIA request. The Farm Services Agency ("FSA") explained that

4

it "does not compile or maintain for corn or soybean total production, acres or yield by 'section' or by 'township,' only county." Declaration of Rachel N. Gray ("Gray Decl."), Ex. 1 [17-5]. And it explained that, while Bush requested information from Actual Production History Coverage Program production records, it did not possess such records. *Id.* Separately, RMA informed Bush that "RMA does not compile or obtain [the corn and soybean] information for production, acres or yield by 'section' or 'township.' This information is collected at the insured unit and county level; thus, RMA does not have responsive records for this portion of the request." Saceda Decl. Ex. 2 at 1. RMA also "does not receive or maintain copies" of APH production records, which are "forms [exchanged] between the insured and [third-party] Approved Insurance Providers (AIPs)." *Id.*

After the two divisions of USDA provided their final responses to Bush, Appellees moved for summary judgment [R.17, 21] and Bush cross-moved for summary judgment [R.19, 23].

## ARGUMENT

## I. THE UNITED STATES IS NOT A PROPER FOIA DEFENDANT

The only statutory cause of action alleged in this suit is a claim under FOIA. Compl. ¶¶ 1, 2. FOIA grants federal courts "jurisdiction to enjoin [an] *agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis

added). The United States of America it is not a government agency as defined under FOIA. *Id.* § 551(1); *cf. Cooper v. Stewart*, Civ. A. No. 11-5061, 2011 WL 6758484, at *1 (D.C. Cir. Dec. 15, 2011) (per curiam) (summary affirmance of dismissal of individual defendants because they are not executive branch "agencies"); *Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014) ("To invoke the jurisdiction of the federal courts, . . . a proper defendant [must] be sued."). Thus, the District Court correctly ruled that the United States "is an improper defendant." Op. at 5.

## II. BUSH'S CLAIM BASED ON 2012-2015 RECORDS IS BARRED BY *RES JUDICATA*

The District Court properly concluded that Bush's FOIA claim based on his request for records for the years 2012 to 2015 is barred by the doctrine of *res judicata*.[3] Op. at 6-7. "Also known as claim preclusion, the doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex, Inc. v.*

---

[3] The District Court's decision is consistent with many other lower court decisions barring the re-litigation of FOIA claims. *E.g., Gonzalez-Lora v. Dep't of Justice*, 169 F. Supp. 3d 46, 53 (D.D.C. 2016) (*res judicata* barred claim "arising from DEA's response to 2000 request for records"); *Roman v. Nat'l Reconnaissance Office*, 952 F. Supp. 2d 159, 164 (D.D.C. 2013) (dismissing FOIA claim for documents "identical to documents requested" in earlier suit against NRO for which summary judgment was granted); *Keys v. Dep't of Homeland Sec.*, Civ. A. No. 08-0726, 2009 WL 614755, at *3-4 (D.D.C. Mar. 10, 2009) (holding claims related to 2003 FOIA request that had been litigated are barred).

*FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citing *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002). Here, all the elements of *res judicata* are present. Both suits involve the same parties—Bush as plaintiff and USDA with its components as defendant. Both suits involve the same cause of action, a claim under FOIA, 5 U.S.C. § 552, to enjoin the alleged unlawful withholding of agency records of "total production, acres, and yield by section for corn and soybeans for Amherst, Rock, Sheridan and Tilden Townships in Cherokee County, Iowa" for the years 2012-2015. *See* Compl. ¶ 1; *Bush I* Complaint. The Northern District of Iowa rendered a final judgment on the merits of the FOIA claim. *See Bush I*, 2017 WL 3568672 at *8. *Res judicata* thus bars Bush's FOIA claim for the same records. *See Wrenn v. Shalala*, Civ. A. No. 94-5198, 1995 WL 225234, at *1 (D.C. Cir. Mar. 8, 1995) ("[T]he court properly concluded that to the extent the complaint involves [FOIA] requests that were the subject of Wrenn's previous litigation in *Wrenn v. Kemp*, No. 93-5267 (D.C. Cir. Jan. 27, 1993), those claims are barred by the doctrine of *res judicata*.").

The District Court astutely observed that Bush knew that *res judicata* posed a problem for the instant FOIA lawsuit because the first section of his complaint is entitled "Res Judicata Does Not Apply To Any Claim Or Issue In The Prior Claim." Compl. ¶¶ 9-14. Plaintiff argues that "res judicata does not apply" because the final judgment in *Bush I* "is not valid[,]" Compl. ¶ 9, but "this is precisely the type of

argument *res judicata* was designed to prevent: individuals relitigating cases they were unhappy with the result of." Op. at 7.

## III.   USDA CONDUCTED AN ADEQUATE SEARCH FOR RECORDS

To prevail at summary judgment on the issue of whether a FOIA search was adequate, an agency need only show that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "There is no requirement that an agency search every record system" for its search to be deemed adequate.  *Id*.  In ruling on a motion for summary judgment, "the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records existed) were searched." *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).  "Agency affidavits are accorded a presumption of good faith" and cannot be rebutted by speculation regarding the existence and discoverability of records.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Here, USDA provided reasonably detailed declarations explaining the methods and scope of the searches and why records responsive to Bush's 2019 FOIA Request were not found (just as they were not when USDA searched for records responsive to Bush's 2016 FOIA Request).

The Risk Management Agency consulted "the only RMA location that would be likely to contain the requested information assuming such records existed," and "confirmed that [the database] does not contain production, acreage, or yield data 'by section,' as requested by plaintiff." Decl. of Jason E. Albright ("Albright Decl.") [R.17-3] ¶ 10. RMA further explained that this database (the Corporate Reporting Business Intelligence database) "does not contain the requested data because RMA does not collect such information 'by section.'" *Id*. RMA further confirmed by reviewing the "data reporting requirements" to RMA by Approved Insurance Providers ("Insurance Providers" or "AIPs") that "RMA is never provided production and yield data 'by section' as requested by plaintiff." *Id*. ¶¶ 11-12.

Similarly, FSA searched "the only FSA locations that would be likely to contain the requested information" if they existed, the Crop Acreage Reporting System and the Service Center Information Management System. Gray Decl. ¶ 3. FSA confirmed that neither database contains the requested data by "section." *Id*. ¶¶ 4–5. FSA also explained how consulting multiple databases and using different variables or fields in those databases would "not allow for a report to be produced" by FSA with the data sought by Bush. *Id*. ¶ 6.

Nonetheless, Bush suggests that information he seeks resides in APH reports generated by farmers and submitted to Insurance Providers. In seeking the "total production, acres, and yield aggregated by section" for certain crops, the 2019 FOIA

Request adds that "[t]his request includes . . . information from 7 C.F.R. § 400.52(a) Actual Production History Coverage Program production reports." Saceda Decl., Ex. 1. The FOIA request does not seek the APH reports themselves, but rather "information from" these reports that is responsive to his request for "total production, acres, and yield aggregated by section" for certain crops. But as the Court correctly found based on the agency declarations, these reports "do not include this information Bush seeks." Op. at 10. USDA averred that "APH reports would not provide the information sought by plaintiff" because the reports "do not require production, acreage, or yield be reported 'by section.'" Albright Decl. ¶ 6.

As for the APH reports themselves, the District Court also analyzed whether they qualify as "agency records," assuming the reports had been requested in the 2019 FOIA Request and contained the information sought by Bush. This analysis was not actually necessary, because Bush did not request APH reports themselves, and "[a]gencies must read FOIA requests as drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). Nevertheless, the District Court properly concluded that the reports are not "agency records." To qualify as "agency records" subject to FOIA disclosure, the records must be (1) created or obtained by the agency, and (2) within the agency's control. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-46 (1989). "By control," the Supreme Court explained in *Tax Analysts*, "we mean that the

materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 145.

First, APH reports fail to satisfy the requirement that the record be created or obtained by the agency. The USDA explained that the APH program policies insure producers against crop yield losses due to a variety of reasons, including weather-related causes and disease. Albright Decl. ¶ 6. Insured farmers provide APH reports to third-party Insurance Providers, who sell and service the crop insurance policies, to determine the insured's yield for insurance purposes. *Id.* ¶¶ 6-7; 7 C.F.R. § 400.52(n). The APH reports are not provided to USDA. *Id.* ¶ 7. Thus, APH reports are not created or obtained by USDA. *Id.* ¶ 7; Op. at 10-11.

Second, APH reports are not "in the agency's control" under this Circuit's precedent. In determining control, courts look to "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Burka v. HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996). Here, farmers submit information on APH reports to Insurance Providers, not to USDA, for the purpose of obtaining insurance. Albright Decl. ¶ 7. Although RMA obtains certain information from Insurance Providers that are derived from farmers' APH reports, it is only a subset of information that is reported

to Insurance Providers and is only that which is necessary to the operation of the crop insurance program. *Id*. The information from APH reports is not otherwise integrated into the USDA's records or systems and cannot be used for just any purpose the agency desires. *Id*. Thus, the District Court was correct to conclude that APH reports are not "agency records."

Ultimately, the USDA's "reasonably detailed affidavit[s]" explaining the searches the agency performed and averring that all files likely to contain responsive materials (if such records existed) were searched satisfy the agency's obligations, and Bush did not supply "countervailing evidence" demonstrating gaps or flaws in USDA's search. *See, e.g., Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (affirming summary judgment for agency where "[plaintiff] fail[ed] to offer evidence of circumstances sufficient to overcome an adequate agency affidavit"). Accordingly, the District Court properly granted USDA's motion for summary judgment and denied Bush's cross-motion.

## IV. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON BUSH'S POLICY OR PRACTICE CLAIMS

Bush also claims that USDA has a "policy or practice" of violating FOIA in various ways. Such claims require a showing that the agency adopted, endorsed, or implemented some "policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). None of Bush's claims survives scrutiny.

Bush claims that "USDA has a policy or practice of violating FOIA due to using an expired statute pursuant to exemption 3 to deny requests." Compl. ¶ 121 (capitalization modified). Specifically, he alleges that Section 1619 of the Food, Conservation and Energy Act of 2008, codified at 7 U.S.C. § 8791, is no longer in force. *See id*. The District Court correctly confirmed that "Section 1619 has not expired" and that "[i]t remains on the books" forbidding the disclosure of "information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservations practices, or the land itself, in order to participate in programs of the Department." Op. at 13; 7 U.S.C. § 8791(b)(2). Accordingly, it is a statute covered by FOIA Exemption 3, which protects information "exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Further, Bush cannot establish that Section 1619 "impair[ed] [his] lawful access" to information in the instant litigation because there were no responsive records to exempt from disclosure. *Payne*, 837 F.2d at 491. Bush therefore has not established his standing to challenge this alleged policy or practice. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he plaintiff must have suffered an 'injury in fact'[.]"); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 71 (D.D.C. 2016) ("To have standing to challenge an alleged 'policy or practice,' a plaintiff must allege that it was subject to the practice challenged.").

Bush also alleges a practice of "violating FOIA due to noncompliance with the legal standard for agency records which results in the performance of inadequate searches." Compl. ¶ 129-30. The thrust of this claim is that because he "has proved . . . that the APH records . . . are agency records[,]" the failure to produce APH reports constitutes an impermissible policy or practice. *Id*. ¶ 130. First, an agency decision that a particular type of document is not an agency record does not by itself state a policy or practice of "delayed disclosure or some other failure to abide by the terms of the FOIA" as contemplated by *Payne*. *See Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012) ("[T]his single request is insufficient to allege the existence of a policy or practice of the CIA refusing to produce the contents of an electronic database because it could just as easily have been an isolated incident."), *aff'd*, *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406 (D.C. Cir. 2020). Second, the 2019 FOIA Request does not request APH reports; it requests "information from" these reports, and in any event, as discussed above, APH reports do not contain the information sought in the 2019 FOIA Request. Third, even if the FOIA request sought the reports themselves, they are not "agency records," as explained above. *See* Op. at 13.

Bush also claims that "USDA has a policy or practice of violating FOIA by not taking affirmative steps toward maintaining agency records in reproducible forms which results in agency records not being readily reproducible." Compl. ¶

131.  As the District Court observed, Bush "appears to be arguing that this failure stems from USDA not collecting section-level data from APH production records." Op. at 13.  "But an agency is under no obligation to create records a requester might find handy."  *Id*. (citing *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 151-52 (1980)).  And an agency cannot "delay[] disclosure" of agency records that do not exist.  *Payne Enters.,* 837 F.2d at 491.

Bush makes a similar contention in his allegation that "USDA has a policy or practice of violating FOIA due to using an administrative determination requiring aggregation to the county level to comply with 7 U.S.C. § 1502(c) of the Federal Crop Insurance Act pursuant to Exemption 3."  Compl. ¶¶ 132-34.  The USDA explained that "[t]he decision to use county as the lowest geographic unit"—rather than collecting data at the section level, as Bush would like—"was made on account of USDA's statutory obligations under the Federal Crop Insurance Act and consistent with the practices of the National Agricultural Statistics Services."  Def. Summ. J. Mot. Reply [R.21] at 13 (citing Supp. Albright Decl. ¶ 6).  But USDA's implementation of the Federal Crop Insurance Act "does not create a [FOIA] policy-or-practice claim" because the decision about how to collect information for the agency's purposes does not concern its implementation of the FOIA.  Op. at 14.

## V. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON BUSH'S "CONSTITUTIONAL" CLAIMS

Finally, Bush purports to bring "constitutional" claims against the "United States" based on his disagreement with the prevailing law of this Circuit in *Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993), that a *pro se* non-attorney FOIA litigant is not entitled to the collection of attorney's fees. Bush contends that the Circuit's interpretation of the FOIA statute as guided by the Supreme Court's decision in *Kay v. Ehrler*, 499 U.S. 432 (1991), violates the Due Process Clause of the Fifth Amendment. *See, e.g.*, Compl. ¶¶ 1, 90, 101, 117. The District Court reasonably declined to "wade into this constitutional argument" because Bush was not entitled to attorney's fees regardless of the *Benavides* precedent. Op. at 14. Under FOIA, a district court may only "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Because "Bush has not 'substantially prevailed' in this litigation[,]" Op. at 14, there is no basis for attorney's fees. Wading into the alleged constitutional claim without satisfying the "substantially prevailed" predicate would yield an advisory opinion, which is beyond a court's jurisdiction. *See Asbury Hosp. v. Cass County*, 326 U.S. 207, 213 (1945) ("This Court is without power to give

advisory opinions. It will not decide constitutional issues which are hypothetical[.]").[4]

## VI. THERE IS NO BASIS FOR INJUNCTIONS PENDING APPEAL

Weeks after filing his notice of appeal, Bush filed two motions for an injunction pending appeal. One motion seeks to enjoin the alleged "policy or practice" of USDA "using Section 1619 of the Food, Conservation, and Energy Act of 2008 . . . to deny requests" under FOIA. *See* Appellant's Mot. for Injunction Pending Appeal to Enjoin USDA's Policy or Practice of Using an Expired Statute to Deny Requests (filed Jan. 3, 2022) (hereinafter, "Section 1619 Motion"). The other motion seeks to enjoin the alleged "policy or practice" of USDA of "noncompliance with the legal standard for agency records which results in the performance of inadequate searches." *See* Appellant's Mot. for Injunction Pending Appeal to Enjoin USDA's Policy or Practice of Noncompliance with the Legal Standard for Agency Records (filed Jan. 3, 2022) (hereinafter, "Agency Records Motion"). Both motions should be denied.

### A. The Legal Requirements for Injunctions Pending Appeal

To begin, Circuit Rule 8(a)(1) states that a "party must ordinarily move first in the district court for the following relief: . . . (C) an order . . . granting an injunction

---

[4]     For good measure, Appellees showed that, even if the constitutional claim were considered, Bush failed to state a plausible due process violation caused by Defendants. Def. Summ. J. Mot. at 20-22.

while an appeal is pending." Bush admits that he did not make a motion below. He argues that it is "'impracticable' for the district court to overrule its own law of the case." *See, e.g.*, Section 1619 Mot. at 2. Any litigant seeking an injunction pending appeal following a loss at the district court level could raise the same argument, and yet Circuit Rule 8(a)(1) nonetheless requires the movant "show" that moving first in the district court would be impracticable. Bush's assertion that he would not prevail is not equivalent to a "show[ing]" that it would be "impracticable" to move first before the district court.

In any event, to obtain an injunction, movants have the burden to establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities" is in their "favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). A preliminary injunction "is an extraordinary . . . remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion" on each of the four factors. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted). Further, a preliminary injunction is "intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781-82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Here, Bush seeks injunctions that would

alter, not preserve, the status quo. Bush asks this Court to order USDA to cease using a particular FOIA exemption and to change the way it interprets what constitutes an "agency record." Although this Court has not decided whether a "mandatory" injunction requires a heightened showing, as shown below, Bush has not satisfied the standard for prohibitive injunctive relief.

## B.    The Section 1619 Motion Should Be Denied

Bush is not likely to succeed to the merits of his claim that USDA has a policy or practice of using an expired statute, Section 1619 of the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill"), to deny FOIA requests because this statute, codified at 7 U.S.C. § 8791, has not "expired." *See* Part IV, *supra*. As USDA noted before the District Court, the Complaint alleges no facts establishing that Section 1619 as enacted in 2008, see 7 U.S.C. § 8791(b)(2), was subject to expiration, sunset, or repeal. Defs.' Summ. J. Mot. at 15. Bush's argument is based not on the text of the 2008 Farm Bill, but instead looks to subsequently passed legislation, specifically Section 701 of the American Taxpayer Relief Act of 2012 (Pub. L. 112-240). Plaintiff focuses on the language in Section 701(a), which states in part that "the authorities provided by each provision of the Food, Conservation, and Energy Act of 2008 . . . in effect on September 30, 2012, shall continue, and the Secretary of Agriculture shall carry out the authorities, until the later of—(1) September 30, 2013; or (2) the date specified in the provision of that Act or amendment made by that

Act."  Compl. ¶ 78.  Plaintiff contends that "[s]ince no date later than September 30, 2013 is specified in Section 1619 [of the 2008 Farm Bill] and since Section 1619 was not reauthorized in the Agricultural Act of 2014 (Pub. L. 113-79; 128 Stat. 649 (2104)), the authority of Section 1619 ended on September 30, 2013 and does not extend to any subsequent period."  Compl. ¶ 79.  What Bush misses is that Section 1619 is not a time-limited agricultural program that expired and required "re-authorization" of funding; it is a disclosure provision added to the U.S. Code without any provision for expiration or sunset.  The Section 1619 Motion should be denied.

### C.    The Agency Records Motion Should Be Denied

Bush also asks this Court to enjoin, pending appeal, the alleged policy or practice of "noncompliance with the legal standard for agency records which results in the performance of inadequate searches in this case."  Agency Records Mot. at 1. This allegation arises from Bush's contention that APH reports are agency records. *See id*. at 8-11.  Bush is unlikely to succeed on the merits of this claim for the same reasons the District Court's summary judgment ruling should be affirmed.  The 2019 FOIA Request does not request APH reports themselves, and thus any purported policy of "noncompliance with the legal standard for agency records" would not have impaired his lawful access to records.  Rather, the 2019 FOIA Request seeks "information from" these reports, and as discussed above, APH reports do not contain the data sought in the 2019 FOIA Request.  And even if Bush had requested

APH reports, the APH reports are not "agency records," as explained above. Moreover, Bush's Agency Records Motion does not even address the first requirement under *Tax Analysts* that the record be "crated or obtained" by USDA, and thus has waived any such contention. *See U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004). In sum, the Agency Records Motion thus should be denied, as well.

## CONCLUSION

For the foregoing reasons, no further briefing in this matter is warranted. Appellees respectfully request that the judgment of the District Court be summarily affirmed and Bush's Section 1619 Motion and Agency Records Motion be denied.

MATTHEW M. GRAVES
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

/s/ Sean Tepe
SEAN M. TEPE
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-2533
sean.tepe@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of March, 2022, the foregoing

Appellee's Motion for Summary Affirmance and Opposition to Appellant's

Motions for Injunction Pending Appeal has been served on Appellant through the

Court's CM/ECF system.

_____/s/_____
SEAN M. TEPE
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

The text for this motion is prepared using 14 point Times New Roman

typeface. The text of this motion consists of 5015 words, as calculated by

Microsoft Word.

_____/s/_____
SEAN M. TEPE
Assistant United States Attorney

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

WILLIAM BUSH,

        *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
ARGRICULTURE, et al.,

        *Defendants*.

Civil Action No. 1:20-cv-00068 (CJN)

---

## MEMORANDUM OPINION

Williams Bush wants corn and soybean production information about certain parts of Iowa. He asked the United States Department of Agriculture for that information in a FOIA request. But the USDA does not maintain that information at the level of granularity Bush seeks. And he has already litigated and lost a near-identical suit covering most of the requested records. Accordingly, for this and other reasons, the Court will grant the Defendants' Motion for Summary Judgment or Judgment on the Pleadings, ECF No. 17, and deny Bush's Cross-Motion for Summary Judgment, ECF No. 20.

### I.      Background

Bush's quest for information about corn and soybean production started five years ago. In 2016, he submitted a FOIA request to USDA's Risk Management Agency, requesting "the total production, acres harvested, and yield for corn and for soybeans *aggregated by section for Amherst, Rock, Sheridan and Tilden townships in Cherokee County, Iowa,* for 2015, 2014, 2013, and 2012." Defs.'s Mot. Ex. 1 (emphasis added). (A section is 640 square acres, or one square mile.)  USDA informed him that it "does not have this information available by section for

townships within a county," so it had nothing to give him. *Id.* Ex. 2. Bush appealed, but the Agency stood by its previous answer. *See id.* Ex. 3. It added that, even if it did have the information, it could not release it under FOIA Exemption Three because § 1502(c) of the Federal Crop Insurance Act, along with § 1619 of the Food, Conservation, and Energy Act of 2008, prohibited it from disclosing unaggregated crop data. *Id.*

Unhappy with this response, Bush filed suit in the Northern District of Iowa. *See Bush v. U.S. Dep't of Agric.*, No. 16-4128, 2017 WL 3568672 (N.D. Ia. Aug. 17, 2017) ("*Bush I*"). But that court ruled against him, holding that "the record shows that RMA did not maintain records matching the description of [Bush's] request" and that "Defendant did not have an obligation under FOIA to create records" for him. *Id.* at *6. It also concluded that USDA's search was reasonably calculated to uncover all relevant documents, *id.*; that Exemption Three would have precluded disclosure of such information, *id.* at *7; and that Bush was not entitled to attorneys' fees, *id.* at *7–8. Bush appealed to the Eighth Circuit, which summarily affirmed. *See Bush v. Risk Mgmt. Agency, USDA/RMA*, 728 F. App'x 607 (2018). The Supreme Court denied his petition for a writ of certiorari. *Bush v. Dep't of Agric., Risk Mgmt. Agency*, 139 S. Ct. 1200 (2019).

Nine months after the Supreme Court denied his petition, Bush sent another FOIA request to the USDA. *See* Declaration of Joneta A. Saceda ("Saceda Decl."), ECF No. 17-4 Ex. 1. It was remarkably similar to his previous one:

> I request total production, acres, and yield *aggregated by section for corn and for soybeans for Amherst, Rock, Sheridan and Tilden Townships in Cherokee County, Iowa*, for the years 2012–2018. I also request a record count by section of the number of records aggregated. This request includes, but not limited to, information from 7 C.F.R. § 400.52(n) Actual Production History Coverage Program production reports. This request encompasses all of USDA, including, but not limited to: Risk Management Agency, Farm Services Agency, and National Agriculture Statistics Service.

*Id.* (emphasis added).

Less than a month after submitting his request, Bush filed this lawsuit *pro se*, naming both the USDA and the United States as defendants.  *See generally* Compl.  Among other relief, the Complaint asks this Court to enjoin USDA "from withholding [ ] agency records relating to the aggregation by section of total production, acres, and yield for corn and for soybeans for four townships in Cherokee County, Iowa, for seven years."  *Id.* ¶ 1.  The sixty-plus-page Complaint advances what appear to be many theories and claims.  *See generally id.*

USDA responded to Bush's FOIA request a few months after he filed suit.  The response came in two emails: one from the Farm Services Agency, the other from the Risk Management Agency.  FSA produced no documents.  It explained that it "does not compile or maintain for corn or soybean total production, acres or yield by 'section' or by 'township,' only county."  Declaration of Rachel N. Gray ("Gray Decl."), ECF No. 17-5 Ex. 1.  And it explained that, while Bush requested information from Actual Production History Coverage Program production records (colloquially referred to as "APH production records"), it was not in custody of those records.  *Id.*  But it did provide an electronic link to crop data that it thought Bush might find useful.  *Id.*

The Risk Management Agency also had nothing to produce.  As it explained, "RMA does not compile or obtain [the corn and soybean] information for production, acres or yield by 'section' or 'township.'  This information is collected at the insured unit and county level; thus, RMA does not have responsive records for this portion of the request."  Saceda Decl. Ex. 2 at 1.  And like FSA, RMA could not provide the information Bush sought from the APH production records: "The records referenced are individual production report forms between the insured and the Approved Insurance Providers (AIPs).  RMA does not receive or maintain copies of the production reports."  *Id.*  It also explained that, while RMA did collect certain information from AIPs, this

information was nonresponsive to his request.  *Id.* at 1–2.  Nonetheless, it provided him a link to

that information, should he find it useful.  *Id.* at 2.

These cross-motions for summary judgment followed.

## II.     Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, this Court may grant summary

judgment when the pleadings, discovery, affidavits, and other material on file show no genuine

dispute of material fact and that the moving party is entitled to judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "[T]he vast majority of FOIA cases

can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Representative*, 641 F.3d

521, 527 (D.C. Cir. 2011).

"FOIA mandates a 'strong presumption in favor of disclosure.'"  *Nat'l Ass'n of Home*

*Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S.

164, 173 (1991)).  That means that an agency must disclose records on request unless they fall

within one of nine statutory exemptions.  *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011).

But while "disclosure, not secrecy, is the dominant objective of the Act," *Dep't of the Air Force*

*v. Rose*, 425 U.S. 352, 361 (1976), an agency has no obligation to produce or create documents it

does not have, *see Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 151–52

(1980).

After reviewing the agency's representations, the Court must then decide "whether [the

agency's] non-disclosure was permissible."  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,

777 F.3d 518, 522 (D.C. Cir. 2015).  In doing so, it can rely on the information provided by the

agency—like declarations and affidavits—so long as "the declarations describe 'the documents

and the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

### III.     Analysis

Bush asserts many claims against both the United States and the USDA.[1]  He argues that USDA's search was inadequate.  Compl. ¶ 43.  He claims that the APH production reports he requested are agency documents.  *Id.*  He asserts that § 1619 of the Food, Conservation, and Energy Act of 2008 has expired.  *Id.* ¶¶ 77–85.  And he brings several "policy or practice" claims, alleging that USDA's data-collection and record-searching processes are inadequate, *see id.* ¶¶ 44–70, 121–34, along with a claim that binding precedent regarding attorneys' fees for *pro se* plaintiffs is unconstitutional, *id.* p. 63.  The Court addresses each in turn.

### A.     The United States is an Improper Defendant

But first, a threshold issue.  As mentioned, Bush sued two defendants: the USDA and the United States.  *See* Compl. ¶ 5.  Yet the only statutory cause of action he invoked was FOIA.  *Id.* ¶ 1.  FOIA grants federal courts "jurisdiction to enjoin [an] *agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B) (emphasis added).  The United States is not an agency. *See id.* § 551(1) ("'agency' means each *authority* of the Government of the United States," (subject to limitations not relevant here) (emphasis added)).  Accordingly, to the extent that Bush is attempting to assert a FOIA action against the United States, it is an improper defendant.

---

[1] Instead of stating claims, much of Bush's complaint seems to be focused on explaining why he should not have lost his prior lawsuit in the Northern District of Iowa.  Scores of paragraphs are dedicated to verbatim transcriptions of the various briefs and oral-argument transcripts filed in that case.  *See, e.g.*, Compl. ¶¶ 29–43.  As Bush is proceeding *pro se*, the Court has done its best to construe these paragraphs as stating affirmative claims.

### B.   Bush's Request for 2012–2015 Records is barred

Turning to the merits, Bush first brings a litany of challenges stemming from USDA's failure to provide responsive documents. But as Bush admits, he has already litigated this claim: "There is no this case without *Bush I*." Compl. ¶ 120. USDA argues that, at least for the request for documents from 2012 to 2015, his claims are thus *res judicata*. Defs.'s Mot. at 8–10.

*Res judicata* precludes a plaintiff from relitigating claims if he has already had his day in court. It applies when there is:

(1) An identity of parties in both suits;

(2) A judgment rendered by a court of competent jurisdiction;

(3) A final judgment on the merits; and

(4) The same cause of action in both suits.

*Roman v. Nat'l Reconnaissance Off.*, 952 F. Supp. 2d 159, 164 (D.D.C. 2013). Each element is met here. There is an identity of parties: Bush as Plaintiff, USDA and its component agencies as Defendants. *Compare* Compl., ECF No. 1 *with Bush I*, 2017 WL 3568672 at *1. The Northern District of Iowa—a court of competent jurisdiction, and, indeed, the one Bush chose to litigate his previous claim in—rendered a final judgment on the merits. *Bush I*, 2017 WL 3568672 at *8. And there is an identical cause of action: using FOIA to compel USDA to produce near-identical information. *Compare* Defs.'s Mot. Ex. 1 *with* Saceda Decl. Ex. 1.[2]

---

[2] Bush sought the same information (seeking in 2016, "total production, acres harvested and yield for corn and for soybeans," Saceda Decl. Ex. 1, and in 2019, "total production, acres, and yield . . . for corn and for soybeans," Def.'s Mot. Ex. 1), for the same areas ("Amherst, Rock, Sheridan and Tilden [t]ownships in Cherokee County, Iowa," Saceda Decl. Ex. 1, Def.'s Mot. Ex. 1), aggregated the same way ("by section," Saceda Decl. Ex. 1, Def.'s mot. Ex. 1). While his 2019 request went slightly further—requesting information from 2016–2018, and specifying that he wanted specific divisions beyond RMA to search for them—the overlap is remarkable.

Bush realizes that *res judicata* poses a problem for his claim.  Indeed, the first section of his complaint is titled "Res Judicata Does Not Apply To Any Claim Or Issue In The Prior Claim." Compl. ¶¶ 9–14.  He copies those same arguments in each of his briefs.  *See* Mem. in Opp. to Defs.'s Mot. for Summ. Judgment / Cross Mot. for Summ. Judgment ("Pl.'s Resp."), ECF No. 19-1 at 6–8; Pl.'s Reply to Opp. and in Supp. of Cross Mot. for Summ. Judgment ("Pl.'s Reply"), ECF No. 23 at 3–6.  The thrust appears to be that "the final judgment on the merits" in *Bush I* "is not valid," since "the rule of law . . . was not upheld."  Compl. ¶ 9.  But this is precisely the type of argument *res judicata* was designed to prevent: individuals relitigating cases they were unhappy with the result of.[3]

In any event, whether *res judicata* applies or not does not matter.  The claims still fail.

### C.    USDA Conducted an Adequate Search for the Requested Documents

The heart of Bush's complaint appears to be that USDA did not conduct an adequate search for his requested records.  To get summary judgment in a FOIA adequacy-of-search case, an agency need only show that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "There is no requirement that an agency search every record system" for its search to be deemed adequate.  *Id.*  In ruling on a motion for summary judgment on the issue, "the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records existed) were searched."  *McCready v. Nicholson*,

---

[3] Bush also contends that the relevant factual circumstances have changed since now and his previous lawsuit.  Pl.'s Resp. at 8.  Specifically, he contends that "USDA has actually obtained production, acres, and yield from all of the APH records from Approved Insurance Providers for the years 2013–2017."  *Id.* at 7–8.  But as discussed below, that is not true.  And as this is not a motion to dismiss, the Court need not accept it as so.

465 F.3d 1, 14 (D.C. Cir. 2006) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326

(D.C. Cir. 1999)).  A mere assertion "about the existence and discoverability of other documents"

cannot overcome the presumption of good faith such affidavits come with.  *SafeCard Servs., Inc.

v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

      USDA performed an adequate search.  The affidavits it provides from its relevant

components—FSA and RMA—confirm this.  For its part, the FSA conducted a search "for data

fields containing Section and/or Township in FSA databases."  Gray Decl. ¶ 3.  In particular, it

"reviewed the Crop Acreage Reporting System (CARS) and the Service Center Information

Management System (SCIMS)," as "[t]hese systems contain acreage reporting and producer

information respectively, and are the only FSA locations that would be likely to contain the

requested information assuming such records exist."  *Id.*  But neither database contained the

relevant information by "section" or "township."  *Id.* ¶¶ 4–5.  It even ran a test search "to determine

if any of the Townships requested were being entered by producers in the 'City' data field," but

found that they were not.  *Id.* ¶ 5.  And it explained how the variables by which Bush requested

his information (section or township) varied from the traditional variables FSA normally

aggregates its data by ("like City or even zip code"), and how that change in variables did "not

allow for a report to be produced."  *Id.* ¶ 6.  Since it did not maintain APH production records, it

deferred to RMA for disclosures related to those documents.  *Id.* § 7.

      RMA took a similar route.  Its affidavit sets forth a detailed background on the role the

Agency plays in the USDA, along with the information it maintains.  *See* Decl. of Jason E. Albright

("Albright Decl."), ECF No. 17-3 ¶¶ 4–9.  It identified "the only RMA location that would be

likely to contain the requested information assuming such records existed," and "confirmed that

[the database] does not contain production, acreage, or yield data 'by section,' as requested by

plaintiff." *Id.* ¶ 10. It further explained that the database "does not contain the requested data because RMA does not collect such information 'by section.'" *Id.* And while Bush requested APH production reports, RMA explained why it could not give him what he sought. A "production report" is the "written record showing [an] insured crop's annual production and [is] used to determine [an] insured's yield for various insurance purposes." 7 C.F.R. § 400.52(n). Farmers report that data to crop-insurance providers, not RMA. Albright Decl. ¶¶ 6–7.

Bush disagrees. He contends that "RMA has provided to FSA actual yield data by producer for the years 2013 through 2017." Pl.'s Resp. at 8 (quoting ARCPLC-78 at 2, Pl.'s Resp. Ex. E). And he alleges that "USDA via FSA has section and township for every farm enrolled in a USDA program and subject to the 2019 FOIA request." *Id.* He also contends that "because USDA did not search based on legal description" its search "was inadequate—and, therefore, in bad faith." *Id.*

But as USDA's supplemental affidavits show, Bush's contentions are misplaced. Regarding the claim that RMA provided FSA yield data for the years 2013 through 2017, Jason Albright—the man who "personally provide[s] these data files to FSA"—explained that "RMA does not provide production, acre, and yield information by land location as sought by Plaintiff." Supplemental Decl. of Jason E. Albright ("Albright Supp. Decl."), ECF No. 22-2 ¶ 4. Rather, Albright explained that "RMA provides yield and production information by state, county, crop, type, year, and irrigation practice. RMA does not give that data to FSA by farm number, by section, etc., because RMA does not have it." *Id.* And regarding Bush's complaints about the lack of search "based on legal description," Pl.'s Resp. at 8, Albright explained how "'legal description' is not a data field" covered in the information Bush references. Albright Supp. Decl. ¶ 5. He even linked to a publicly available document showing so. *See id.*

9

As for the FSA, in its supplemental affidavits, USDA explained that Bush is partially right: FSA has a data set with a field called "tract description," which *sometimes* contains a "legal description" of the land.  Suppl. Decl. of Rachel N. Gray ("Gray Supp. Decl."), ECF No. 22-3 ¶ 2. (When a farmer enrolls in a FSA program, she provides the farm's deed or lease.  A program technician then fills in the tract-description field. *Id.* ¶ 3.)  But the tract-description field is a "free-form" text entry field, limited to fifty characters, with no standard formatting, *id.* ¶¶ 2–3, 5, and thus FSA also does not maintain the records sought by Bush.  To the extent that Bush suggests that *other* information is maintained by FSA, "[a]gency affidavits are accorded a presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1200, and they "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.' " *Id.* (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

USDA's affidavits show that it does not have the records that Bush seeks.  Accordingly, the Court will grant summary judgment to the Defendants on this point.

### D.   APH Production Reports are not Agency Records

As discussed above, Bush seeks "information from 7 C.F.R. § 400.52(a) Actual Production History Coverage Program production reports."  Saceda Decl. Ex. 1.  As discussed above, those reports do not include the information Bush seeks.  And even if they did, Bush's claim would fail for a more fundamental reason: the documents do not qualify as "agency records" subject to FOIA.

To be an "agency record," the document must be created or obtained by the agency and be within the agency's control.  *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144–46 (1989). The APH production reports fail the threshold requirements.  As the Albright Declaration explains, APH "[p]roduction reports are sent to [insurance providers]; they are not sent to RMA or incorporated into RMA's records or files."  Albright Decl. ¶ 7.  It is those insurance providers who "retain those reports, which are not shared with RMA, because the reports are used by [those

providers] for selling and servicing the insurance policies they issue." *Id.* While it is true that the insurance providers "share certain information with RMA derived from APH reports," that information is limited, "and none of those records are responsive to plaintiff's FOIA request." *Id.* Accordingly, because USDA's affidavits conclusively establish that USDA neither created nor obtained the APH production records, they cannot be considered agency records. *See Physicians Comm. for Responsible Med. v. USDA*, 316 F. Supp. 3d 1, 10 (D.D.C. 2018) ("USDA neither created nor obtained the NCBA beef checkoff records, and it was not in control of them at the time the FOIA request was made.").

Bush responds that the APH production reports are documents of government "agents" and thus subject to FOIA. *See* Pl.'s Resp. at 10–11. He cites a declaration from another case and two cases to support this assertion. *See id.* But none proves his point.

Start with the declaration, which is from a Secret Service agent in an unrelated case involving information maintained by a Secret Service travel agency. *See* Pl.'s Resp. at 10–11. Because the Secret Service did not maintain records of what the individual trips cost itself, it requested that its contract travel provider run searches for the information sought in the FOIA request. *Id.* at 11. Bush points to this declaration to argue that "[t]he Secret Service clearly regards the records created—pursuant to the Secret Service's official agency duties—by the Secret Service's contract travel provider to be agency records subject to FOIA." *Id.* He thus argues that "[t]his Court should hold that records created by regulation pursuant to the performance of USDA's official duties to, likewise, be agency records subject to FOIA." *Id.* But of course, affidavits from Secret Service agents are not binding authority.

As for the cases on which Bush relies, he begins with *Burka v. HHS*, 87 F.3d 508 (D.C. Cir. 1996), arguing that USDA had "constructive control" over the APH production records. But

while *Burka* did hold that an agency had such control over some records—"computer tapes recording survey responses about smoking habits and attitudes," *id.* 515—its facts are not analogous to the ones here.  While the tapes were made by a third party, they were compiled during a study on smoking habits commissioned by HHS.  *Id.*  HHS also planned to take physical possession of them.  *Id.*  The APH production records differ on both accounts: they are not commissioned by USDA, and USDA has no intention to take control of them.

Bush also relies on *Wolfe v. HHS*, 711 F.2d 1077 (D.C. Cir. 1983), to support his argument that, "[i]f a government agency uses an agent or agency to perform official government agency duties, the resulting records of said agent or agency are government agency records."  Pl.'s Resp. at 10.  But *Wolfe* does not support Bush's position here; if anything, it undermines his position.  In that case, the court held that the document at issue—a presidential-transition memorandum—was *not* an agency record: while it was related to the agency's work, it was "never integrated . . . into its record systems" or otherwise used by it.  *Id.* at 1081.

*

USDA does not create or control the APH production records.  They are thus not "agency records," and USDA was under no obligation to disclose them to Bush.  The Court accordingly grants summary judgment to the Defendants on this point.

### E.    Bush Has Not Made Out a Valid "Policy or Practice" Claim

Bush also asserts a slew of claims arguing that USDA has a policy or practice of violating FOIA in different ways.  To maintain such a claim, he must allege facts showing that the agency has adopted or otherwise put in place a "policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988).  None of his claims withstand scrutiny.

Bush first claims that "USDA has a policy or practice of violating FOIA due to using an expired statute pursuant to exemption 3 to deny requests." Compl. ¶ 121 (capitalization modified). Specifically, he alleges that § 1619 of the Food, Conservation and Energy Act of 2008, codified at 7 U.S.C. § 8791, is no longer in force. *See id.*

Section 1619 has not expired. It remains on the books, forbidding the disclosure of "information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservations practices, or the land itself, in order to participate in programs of the Department." 7 U.S.C. § 8791(b)(2). It is thus covered by Exemption Three, which covers information "exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).

He next alleges that "USDA has a policy or practice of violating FOIA due to noncompliance with the legal standard for agency records which results in the performance of inadequate searches." Compl. ¶¶ 129–30 (capitalization modified). Specifically, Bush alleges that he "has prove[n] . . . that the APH records . . . are agency records," and thus contends that USDA "is following an impermissible practice of violating FOIA due to noncompliance with the legal standard for agency records which results in the performance of inadequate searches." *Id.* ¶ 130. But APH production records are not agency records, as discussed above.

Bush then argues that "USDA has a policy or practice of violating FOIA by not taking affirmative steps toward maintaining agency records in reproducible forms which results in agency records not being readily reproducible." *Id.* ¶ 131 (capitalization modified). He appears to be arguing that this failure stems from USDA not collecting section-level data from APH production records. *See id.* (citing *id.* ¶ 129). But an agency is under no obligation to create records a requester might find handy. *See Kissinger*, 445 U.S. at 151–52.

Finally, Bush states that "USDA has a policy or practice of violating FOIA due to using an administrative determination requiring aggregation to the county level to comply with 7 U.S.C. § 1502(c) of the Federal Crop Insurance Act pursuant to Exemption 3."  Compl. ¶¶ 132–34 (capitalization modified).  He appears to contend that there is no statutory directive that prevents USDA from aggregating data at the section level, and thus by deciding it will only do so at the county level, it violates FOIA.  *See id.*  But as USDA explains, "The decision to use county as the lowest geographic unit was made on account of USDA's statutory obligations under the Federal Crop Insurance Act and consistent with the practices of the National Agricultural Statistics Services."  Defs.'s Reply at 13.  Bush might dislike this implementation of a statutory directive. But that does not create a policy-or-practice claim.[4]

### IV.    The Court Need Not Address Bush's Constitutional Claims, Since He Is Not Entitled to Attorneys' Fees

Bush also claims to raise a constitutional claim against the United States regarding his disagreement with judicial opinions holding that *pro se* FOIA litigants are not entitled to the collection of attorneys' fees.  *See* Compl. at p. 63.  But under FOIA, a district court may only "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section *in which the complainant has substantially prevailed*."  5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).  Bush has not "substantially prevailed" in this litigation.  Accordingly, he is not entitled to attorneys' fees.  So the Court will not wade into this constitutional argument.

---

[4] In his summary-judgment briefing, Bush raises for the first time another policy-or-practice claim, this time alleging that USDA has a policy or practice of violating FOIA by "not providing records in the form requested."  Pl.'s Resp. at 21–23.  But Bush cannot effectively amend his complaint and pursue this new theory of liability now.  *Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 76 (D.D.C. 2019) ("Plaintiff[ ] cannot use summary judgment briefing to press claims not raised in [his] complaint.").

### V.      Conclusion

Plaintiffs cannot relitigate cases they have already lost.  And FOIA does not require an agency to create records that do not exist.  The Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.


DATE:  September 30, 2021

_____
CARL J. NICHOLS
United States District Judge

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WILLIAM BUSH,

         *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
ARGRICULTURE, et al.,

         *Defendants*.

Civil Action No. 1:20-cv-00068 (CJN)

## <u>ORDER</u>

This matter is before the Court on Defendants' Motion for Summary Judgment, ECF No. 17, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 20.  For the reasons discussed in the accompanying Memorandum Opinion, it is

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**; and

**ORDERED** that Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

The Clerk is **DIRECTED** to close this case.

This is a final, appealable order.

DATE:  September 30, 2021

                    _____

CARL J. NICHOLS
United States District Judge

1